635 A.2d 251

**YORK NEWSPAPER COMPANY, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**No. 1235 C.D. 1993.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 15, 1993.

Decided Dec. 14, 1993.

476

Richard Robinson, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Michael J. Krout, for intervenor Christopher D. Smith.

Before DOYLE and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

York Newspaper Company (Employer or York) has appealed to this Court from the decision and order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of the referee finding that Christopher Smith (claimant) was not ineligible for benefits as a self-employed independent contractor. We affirm.

The Board made the following findings of fact:

1. Claimant was last employed as a full-time delivery person by the York Newspapers from February 1992 and his last day of work was August 11, 1992.

2. Claimant's job responsibilities included delivering bundles of newspapers to carriers.

3. The claimant did not deliver the newspapers directly to the customers.

4. The Employer told the claimant the scheduled times that he had to report to the Employer's jobsite.

5. The claimant received his bundles of newspapers at the Employer's jobsite.

6. The claimant's schedule was given to him by either the Employer's dock supervisor or manager and/or was posted

on the bulletin board in the driver's room at the Employer's jobsite.

7. The claimant received a manifest from the Employer each day which indicated where the newspapers were supposed to be delivered.

8. The order of the delivery of the newspapers was also indicated by the manifest.

9. The Employer gave the claimant bundle bags to bag the newspaper bundles and stickers to write route numbers on to indicate to the carriers what was their bundle.

10. When the claimant was finished completing his delivery, the claimant used the employer supplied two way radio to call his time out to the Employer.

11. The claimant radioed the Employer on a daily basis.

12. The employer gave the claimant written documentation when it changed the claimant's deliveries on a daily basis.

13. The claimant had an immediate supervisor, the Department of Transportation manager, when he worked for the Employer.

14. The claimant did not work for any other employer when he worked for York Newspapers.

15. The claimant did pay drivers to substitute for him occasionally when he could not drive.

16. The claimant also substituted for other drivers.

17. The claimant maintained his own van in which he delivered the newspapers.

18. The claimant received a 1099 for income tax purposes.

19. The Employer deducted the claimant's van payments from the claimant's pay-checks.

20. The claimant originally had an ST Blazer, but the employer desired that the claimant purchase a van in order to do his job better.

21. The claimant was paid for the number of hours worked and the number of miles that the claimant drove.

22. The claimant received $6.00 an hour and 21 cents a mile.

23. Originally the Employer had regarded all of the full-time delivery employers [sic] as company drivers, but the employer later decided to make them contractors.

24. The claimant had no influence on the number of bundles of newspapers and the names that were placed on the bundles of newspapers.

25. Once the claimant had to return to the employer's jobsite to pick-up a bundle to take it to a location that was short a bundle.

26. The claimant is not an independent contractor.

(77a–78a.)

The issue in this case is whether the claimant was an employee of York or an independent contractor during his last employment.[1] Section 402(h) of the Unemployment Compensation Law (the Law),[2] states that "[a]n employee shall be ineligible for compensation for any week— ... in which he is engaged in self employment."

"Employment" is further defined by Section 4($l$)(2)(B) of the Law, 43 P.S. § 753($l$)(2)(B):

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

1. Our scope of review in an unemployment compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Pennsylvania Power Co. v. Unemployment Compensation Board of Review*, 135 Pa.Commonwealth Ct. 157, 579 A.2d 1030 (1990).

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h).

480

■ This section places the burden on the employer to show that the claimant was (a) free from control and direction in the performance of the work; and (b) as to such services he was customarily engaged in an independent trade or business. *Attorneys on Call v. Unemployment Compensation Board of Review*, 155 Pa.Commonwealth Ct. 96, 624 A.2d 754 (1993). Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee. *Kardon v. Unemployment Compensation Board of Review*, 40 Pa.Commonwealth Ct. 20, 396 A.2d 487 (1979).

In the case of *Johnson v. Workmen's Compensation Appeal Board (DuBois Courier Express)*, 158 Pa.Commonwealth Ct. 76, 82, 631 A.2d 693, 696 (1993), the court said:

In *Hammermill Paper Company v. Rust Engineering Co.*, 430 Pa. 365, 370, 243 A.2d 389, 392 (1968), our Supreme Court set forth the following factors to consider when determining the type of relationship which exists:

· control of the manner in which work is to be done;

· Responsibility for result only;

· Terms of agreement between the parties;

· the nature of the work or occupation;

· skill required for performance;

· whether one employed is engaged in a distinct occupation or business;

· which party supplies the tools;

· whether payment is by the time or by the job;

· whether work is part of the regular business of the alleged employer, and

· whether the alleged employer has the right to terminate the employment at any time.

Because each case is fact specific, all of these factors need not be present to determine the type of relationship which exists. *J. Miller Co. v. Mixter*, 2 Pa.Commonwealth Ct. 229, 277 A.2d 867 (1971).

While all of these factors are important indicators, the key element is whether the alleged employer has the *right*

to control the work to be done and the manner in which it was performed. *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board (Michalovicz)*, 61 Pa.Commonwealth Ct. 469, 434 A.2d 228 (1981). If the alleged employer has this right, an employer-employee relationship likely exists. *Douglas v. Workmen's Compensation Appeal Board (Dennis Truck[ing] Company)*, 40 Pa.Commonwealth Ct. 101, 396 A.2d 882 (1979). (Emphasis in original.)

■ In this case, it is undisputed that the claimant was paid six dollars ($6.00) an hour for his services and twenty-one cents ($.21) a mile as reimbursement for his automobile expenses.

Furthermore, Douglas Woods, the employer's transportation manager to June 26, 1992, who supervised claimant, testified that every day the employer gave the claimant a manifest, showing the places where the newspapers were to be delivered to the carrier drop points and indicating the order in which the bundles of newspapers should be delivered. The claimant also testified that the employer instructed him as to the route to be followed. This evidence shows that not only did the employer have the right to exercise control over the manner in which the work was to be done, but actually exercised that right.

Thomas Norton, the employer's vice president of operations, offered conflicting testimony on this point claiming that the claimant could deliver the bundles in any order he desired but, of course, the Board was not bound to accept his testimony.

The employer relies upon the case of *York Gazette Co. v. Bureau of Employment Security, Dept. of Labor and Industry*, 28 Pa.Commonwealth Ct. 410, 368 A.2d 1314 (1977), and the case of *Venango Newspapers v. Unemployment Compensation Board of Review*, 158 Pa.Commonwealth Ct. 379, 631 A.2d 1384 (1993).

However, in both of those cases, the record disclosed that the drivers had complete control over the manner in which the papers were delivered and that they did not receive an hourly wage. These cases are, therefore, inapposite.

 The presumption is that one who performs services for wages is an employee. That presumption is reinforced by the provisions of Section 4(*l*)(4)(18) of the Law, 43 P.S. § 753(*l*)(4)(18):

The word "employment" shall not include—

Service performed by an individual under the age of eighteen in the delivery or distribution of newspapers or shopping news, not including delivery or distribution to any point for subsequent delivery or distribution.

This statute makes carriers under the age of eighteen independent contractors, but treats distributors of any age as employees.

The finding by the Board that the employer did not establish that the claimant was free from its control and direction in the performance of his work was clearly supported by substantial evidence. In view of our disposition of the case, it is not necessary for us to consider whether the employer also proved that the claimant was customarily engaged in an independently established trade or business.

Accordingly, we affirm.

### ORDER

NOW, December 14, 1993, the order of the Unemployment Compensation Board of Review, dated May 4, 1993, at B–311839, is affirmed.